FOX, Justice.
[¶1] TC and GC, husband and wife, are the former foster parents of L-MHB. The district court dismissed their petition to adopt L-MHB because it did not comply with the adoption statutes. We affirm.
ISSUES
[¶2] We rephrase the dispositive issues as:
1. Does the court lack jurisdiction over the adoption petition because:
A. Petitioners filed the adoption petition without the consents and relinquishments required by statute?
B. The child did not reside in the petitioners' home at the time they filed the petition for adoption?
2. Does the failure to comply with the adoption statutes warrant dismissal of an adoption petition for failure to state a claim because:
A. Petitioners filed the adoption petition without the consents and relinquishments required by statute?
B. The child did not reside in the petitioners' home at the time they filed the petition for adoption?
FACTS
[¶3] DFS filed a neglect petition against L-MHB's mother soon after L-MHB's birth, took legal custody of the child, and placed her with TC and GC, who remained her foster parents from April 18, 2014 to September 25, 2015. Almost a year after L-MHB had been removed from their home, TC and GC filed a petition in district court to adopt her. Of the five categories of documents which "shall be filed with every petition to adopt a child," Wyo. Stat. Ann. § 1-22-104(c) (LexisNexis 2018 Supp.), TC and GC filed only their affidavits, stating that neither of them suffered from mental disorders, had a criminal history, or were on probation or parole. They did not file a written consent from the mother, a proof of relinquishment from DFS, a medical report for L-MHB, or an affidavit regarding persons awarded visitation rights.
[¶4] DFS filed an answer and motion to dismiss the petition. DFS argued that the district court could not grant the petition because DFS did not relinquish custody of L-MHB, L-MHB did not live with TC and GC when they filed the petition, and TC and GC did not file the required medical report for L-MHB. Soon after, the mother filed her answer to the petition. She asserted that she was willing to sign a consent to the adoption, but only if TC and GC were the "adoptive family." TC and GC argued that they only needed the mother's consent to the adoption because her parental rights had not been terminated, and thus, she retained the right to consent to the adoption pursuant to her residual parental rights under Wyo. Stat. Ann. § 14-3-402.
[¶5] The district court granted DFS's motion to dismiss, agreeing with DFS that without its relinquishment TC and GC could not adopt L-MHB, and that TC and GC lacked standing because L-MHB did not reside with *564 TC and GC when they filed their petition. Finally, the court agreed that the petition was not in "substantial compliance with the statute" because TC and GC failed to file a medical report for L-MHB with their petition. This appeal followed.
STANDARD OF REVIEW
[¶6] We review whether a court has jurisdiction over a case de novo. Essex Holding, LLC v. Basic Properties, Inc. , 2018 WY 111, ¶ 28, 427 P.3d 708, 716 (Wyo. 2018). We also review a district court's decision to grant a motion to dismiss de novo. Tuttle v. Lee , 2018 WY 104, ¶ 8, 425 P.3d 998, 1000 (Wyo. 2018). We accept all facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. Id. We will affirm "when the complaint shows on its face that the plaintiff is not entitled to relief." Id. (citation omitted). Finally, this case requires that we interpret the adoption statutes. Issues of statutory interpretation are reviewed de novo. Kite v. State , 2018 WY 94, ¶ 20, 424 P.3d 255, 262 (Wyo. 2018).
DISCUSSION
[¶7] DFS contends that the district court did not have subject matter jurisdiction to hear the petition, and thus, this Court also lacks jurisdiction. Alternatively, DFS asserts that, even if the district court had jurisdiction to hear the petition, it still correctly dismissed the petition because TC and GC failed to substantially comply with the adoption statutes. Although TC and GC's failure to comply with the statutory requirements is fatal to their adoption petition, it does not defeat jurisdiction.
I. The district court had jurisdiction over the adoption petition
[¶8] DFS contends that the district court lacked jurisdiction because of TC and GC's failure to file the required consents and relinquishments with their petition, and because of TC and GC's lack of standing under the adoption statutes.
A. Petitioners' failure to attach the consents and relinquishments required by statute did not deprive the district court of jurisdiction
[¶9] Jurisdiction refers to a court's ability to hear a case. See Circuit Court of Eighth Judicial Dist. v. Lee Newspapers , 2014 WY 101, ¶ 33, 332 P.3d 523, 533 (Wyo. 2014) (citing Reed Elsevier, Inc. v. Muchnick , 559 U.S. 154, 160, 130 S.Ct. 1237, 1243, 176 L.Ed.2d 18 (2010) ). If a court lacks jurisdiction, it must dismiss the case. Harmon v. Star Valley Med. Ctr. , 2014 WY 90, ¶ 14, 331 P.3d 1174, 1178 (Wyo. 2014). "[W]e have long recognized that subject matter jurisdiction is an issue that can be raised at any time by any party or the Court." Matter of Mears , 2018 WY 109, ¶ 17, 426 P.3d 824, 828 (Wyo. 2018) (citing Edsall v. Moore , 2016 WY 71, ¶ 10, 375 P.3d 799, 801 (Wyo. 2016) ). "A lack of subject matter jurisdiction constitutes a fundamental defect in a proceeding which cannot be cured by waiver or consent by the parties." Weller v. Weller , 960 P.2d 493, 496 (Wyo. 1998) (citation omitted). Article 5, section 10 of the Wyoming Constitution provides, "district court[s] [ ] have original jurisdiction of all causes both at law and in equity and in all criminal cases ... and of such special cases and proceedings as are not otherwise provided for." The law requires adoption proceedings to be brought in district court, Wyo. Stat. Ann. § 1-22-104(a) ; therefore, the district court in this case had subject matter jurisdiction.
[¶10] DFS contends that the district court did not acquire subject matter jurisdiction because the petition was filed without the requisite attachments.[1] However, *565 there are "critical difference[s] between true jurisdictional conditions and nonjurisdictional limitations on causes of action[.]" Reed Elsevier, Inc. , 559 U.S. at 161, 130 S.Ct. at 1244 (citations and some quotation marks omitted). "[A] statutory requirement is jurisdictional only where there is 'clear' indication that [the legislature] wanted the requirement to be 'jurisdictional.' " Harmon , 2014 WY 90, ¶ 48, 331 P.3d at 1188 (quoting Henderson ex rel. Henderson v. Shinseki , 562 U.S. 428, 436, 131 S.Ct. 1197, 1203, 179 L.Ed.2d 159 (2011) ) (alteration added) (some quotation marks omitted). "[A] district court's jurisdiction does not depend upon the allegations in the pleading; rather, it depends upon whether the court's authority extends over the general class to which the case belongs." Brown v. City of Casper , 2011 WY 35, ¶ 12, 248 P.3d 1136, 1140 (Wyo. 2011) (citing State v. Kusel , 29 Wyo. 287, 213 P. 367, 369 (1923) ). "If the court has jurisdiction of the subject-matter and of the parties nothing further is required." Id. at ¶ 15, 248 P.3d at 1141 (citation omitted).
[¶11] "[A]doption proceedings shall be commenced by a petition filed in the district court." Wyo. Stat. Ann. § 1-22-104(a) (emphasis added). Although the statutes require certain documents, such as consents and relinquishments, to be filed with the petition, nowhere is there an indication, let alone a "clear indication," that the legislature intended these to be jurisdictional requirements. Without any such indication, TC and GC's failure to attach the mother's consent and DFS's relinquishment did not deprive the district court of jurisdiction.
[¶12] The State cites In re JWT , 2005 WY 4, 104 P.3d 93 (Wyo. 2005), to support its argument that the failure to attach the necessary consents and relinquishments deprived the district court of jurisdiction to hear the petition. In JWT , the appellees filed a petition to adopt JWT, and attached a "permission to adopt" that the mother had previously signed. Id . at ¶¶ 2, 3, 104 P.3d at 94. Appellees stated that the putative father was unknown, but did not attach the required affidavit from the mother which confirmed that the father was unknown. Id. at ¶ 3, 104 P.3d at 94. We reversed the district court's order granting the adoption without the required affidavit, id . at ¶ 7, 104 P.3d at 95, holding that "[T]he appropriate documentation never having been filed, the district court did not obtain jurisdiction to hear the adoption." Id. at ¶ 6, 104 P.3d at 94.
[¶13] The origins of this statement lie in In re Adoption of Strauser , 65 Wyo. 98, 196 P.2d 862 (Wyo. 1948). In Strauser , the adopting parties filed a petition to adopt two children, but the father objected. Id . at 103, 196 P.2d at 863. The district court granted the petition because the father had abandoned the children. Id. The issue was whether the evidence was sufficient to establish that the father had abandoned his children. Id. at 104, 196 P.2d at 863.
[¶14] Although the adoption statutes at the time did not contain a statutory mechanism permitting an adoption without parental consent, we had previously held that the term "parent" as used in the adoption statutes, referred to a person who "still possesses a right to the care, custody, or control of the child," and that this "right" could be lost if the parent had abandoned their child. See Strauser , 65 Wyo. at 112-13, 196 P.2d at 866-67 (citing Nugent v. Powell , 4 Wyo. 173, 33 P. 23 (1893) ).[2] We then addressed whether the *566 evidence supported the district court's determination that the father had abandoned his children, and thus, lost the ability to consent, explaining:
Consent lies at the foundation of statutes of adoption. In re Cozza , 163 Cal. 514, 126 P. 161 [ (1912) ] ; In re Lease , 99 Wash. 413, 169 P. 816 [ (1918) ]. Our statutes are especially clear on that point. In the routine case, the parties consent or agree, and the final act of the court or judge is called the 'approval of such agreement and adoption' (§ 58-201), or refusal 'to approve such adoption' (§ 58-205). The first duty of the judge is to see that the necessary consents are given. If they are not, the proceeding is at an end. There is nothing for the judge to approve . ... The important requirement is the consent of parents who have not abandoned the children.
Id. at 113-14, 196 P.2d at 867 (emphasis added).
[¶15] A line of cases leading up to JWT construed this passage to carry jurisdictional significance. See JK ex rel. DK v. MK , 5 P.3d 782, 788 (Wyo. 2000) (citing Matter of Adoption of AMD , 766 P.2d 550, 552 (Wyo. 1988) (citing Strauser ) ). A careful reading of Strauser and the adoption statutes in effect at the time, however, show that the jurisdictional construction we have given to Strauser is misplaced.
[¶16] A party's failure to attach the appropriate consents and relinquishments with their adoption petition, although sometimes fatal to the petition, does not deprive the court of subject matter jurisdiction. This conclusion is consistent with our recent jurisprudence in other areas, in which we have backed away from a broad application of the term "jurisdiction." See Harmon , 2014 WY 90, ¶ 48, 331 P.3d at 1188 (holding that defects in a governmental claim are not jurisdictional); Brown , 2011 WY 35, ¶ 9, 248 P.3d at 1139 (holding a plaintiff's failure to allege in his complaint that he presented his governmental claim to the governmental entity does not deprive a court of jurisdiction). To the extent that Strauser , AMD , JK , and JWT state otherwise, they are overruled.
B. The court had jurisdiction over the proceeding even though the child did not reside in the petitioners' home when they filed the petition
[¶17] DFS argues that TC and GC lack standing because L-MHB did not reside in their home at the time they filed their petition, and therefore the district court also lacked subject matter jurisdiction over the petition on these grounds. Wyo. Stat. Ann. § 1-22-106 (LexisNexis 2017) provides that an adoption petition "shall be filed upon the entry of child in the adoptive home or as soon thereafter as is reasonably convenient." Although, as discussed, infra ¶¶ 31-32, the fact that L-MHB did not reside with TC and GC when they filed their adoption petition is fatal to its success, we do not agree that it deprives the court of jurisdiction.
[¶18] We have stated that, if a party lacks standing, a court does not acquire subject matter jurisdiction over the case because standing has "jurisdictional magnitude." See, e.g. , Miller v. Wyo. Dep't of Health , 2012 WY 65, ¶ 17, 275 P.3d 1257, 1261 (Wyo. 2012) (citations omitted); Schulthess v. Carollo , 832 P.2d 552, 556 (Wyo. 1992). Cases categorically labelling standing as having jurisdictional significance can generally be traced to our opinion in Washakie County School District No. One v. Herschler , 606 P.2d 310, 316-17 (Wyo. 1980). In that case, we cited to the Black's Law Dictionary definition of standing, which included the statement that "Standing is a jurisdictional issue[.]" Id. at 316-17 (citing Black's Law Dictionary 1260-61 (5th ed. 1979) ). To support that statement, however, the dictionary relied on federal law, citing Weiner v. Bank of King of Prussia , 358 F.Supp. 684, 685 (E.D. Pa. 1973), which in turn cited Flast v. Cohen , 392 U.S. 83, 99-100, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). Flast included a lengthy discussion of federal standing jurisprudence. 392 U.S. at 94-101, 88 S.Ct. at 1950-53. That discussion, however, was based on the federal constitutional "cases and controversies" limitation on Article III federal courts. Id. The "cases and controversies" standing limitation on federal courts is indeed jurisdictional. See, e.g. , *567 Spokeo, Inc. v. Robins , --- U.S. ----, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). But no such limitation exists in the Wyoming Constitution. See Allred v. Bebout , 2018 WY 8, ¶ 35, 409 P.3d 260, 269 (Wyo. 2018) ("The Wyoming Constitution has no comparable provision, and instead it contains provisions such as article I, section 8, providing for access to courts.").
[¶19] Despite the absence of a constitutional standing requirement in Wyoming, standing remains a pragmatic and important justiciability doctrine. Courts can, and have, imposed prudential standing requirements. But these prudential standing principles are not jurisdictional. Prudential standing "encompass[es] ... at least three broad principles":
[T]he general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.
Lexmark Int'l, Inc. v. Static Control Components, Inc. , 572 U.S. 118, 126, 134 S.Ct. 1377, 1386, 188 L.Ed.2d 392 (2014) (internal quotation marks and citations omitted). Wyoming's Brimmer standing test incorporates these general principles, albeit phrased differently. See Allred , 2018 WY 8, ¶ 37, 409 P.3d at 270 (discussing Brimmer v. Thomson , 521 P.2d 574 (Wyo. 1974) ).
[¶20] Statutory standing is a close cousin of prudential standing, and looks to whether "this plaintiff has a cause of action under the statute ...." Steel Co. v. Citizens for a Better Environment , 523 U.S. 83, 97 n.2, 118 S.Ct. 1003, 1013 n.2, 140 L.Ed.2d 210 (1998) (emphasis in original); see also Davis v. Passman , 442 U.S. 228, 239, 99 S.Ct. 2264, 2274, 60 L.Ed.2d 846 (1979). Because resolution of a party's prudential standing requires to some extent an examination of the facts and merits of the underlying cause of action, prudential standing cannot be jurisdictional. See Lexmark Int'l, Inc. , 572 U.S. at 128, 134 S.Ct. at 1387-88. Similarly, if a party lacks standing under the statute at issue, their "claim should be dismissed for failure to state a claim upon which relief can be granted, not for lack of subject-matter jurisdiction." Roberts v. Hamer , 655 F.3d 578, 581 (6th Cir. 2011). This conforms with our discussion in paragraphs 9-16, supra , that clarified and reaffirmed the principle that a court's subject matter jurisdiction, or adjudicatory authority, extends over the general class to which the case belongs, and is not typically defeated by pleading defects.
[¶21] A review of our cases shows that we have applied the non-jurisdictional prudential/statutory standing principles discussed above even when we have labeled a standing question as jurisdictional. For example, in Essex Holding, LLC , 2018 WY 111, ¶¶ 41-45, 427 P.3d at 721-22, the standing question concerned whether a party could bring a counterclaim under some restrictive covenants, citing to our line of cases discussing standing as jurisdictional. Id. at ¶ 42, 427 P.3d at 721. Yet, to decide the standing question in Essex , we had to interpret the covenants at issue. Id. at ¶¶ 42-45, 427 P.3d at 721-22. In doing so, we employed our principles of contract interpretation to determine if the party had a cause of action under the covenants. Id. at ¶ 42, 427 P.3d at 721. This was in effect a prudential standing analysis, rather than a jurisdictional one, because it required us to examine the underlying merits of the dispute.
[¶22] In Gheen v. State ex rel. Department of Health, Division of Healthcare Financing/EqualityCare , we again stated that standing is jurisdictional, but went on to interpret the statutes at issue to decide whether the State had standing to seek reimbursement of Medicaid benefits. 2014 WY 70, ¶¶ 15-19, 326 P.3d 918, 923-24 (Wyo. 2014). In upholding the State's right to sue under the statute, we relied solely on the language of the Medicaid statutes. Id. at ¶ 16, 326 P.3d at 923 (citing Wyo. Stat. Ann. §§ 42-4-206 and -207). Unless the legislature has given a " 'clear' indication that [it] wanted the requirement to be 'jurisdictional,' " Harmon , 2014 WY 90, ¶ 48, 331 P.3d at 1188 (citations omitted), statutory standing is not a jurisdictional determination; rather, it is a question of whether the party has a cause of action or *568 claim under the circumstances of the particular case.
[¶23] To further support our conclusion that our prudential or statutory standing principles are usually non-jurisdictional, we look to our frequent use of the phrase "standing is a jurisprudential rule of jurisdictional magnitude." Heinemann v. State , 2018 WY 31, ¶ 14, 413 P.3d 644, 647 (Wyo. 2018) (quoting Williams v. City of Gillette , 2011 WY 6, ¶ 6, 245 P.3d 362, 364 (Wyo. 2011) ) (emphasis added). A "jurisprudential rule" is not jurisdictional. Jurisprudential rules are judicially created rules of justiciability. Hull v. IRS , 656 F.3d 1174, 1181-82 (10th Cir. 2011). A court cannot limit its jurisdiction by simply saying its self-created rule requires it to.
[¶24] The Wyoming Constitution does not make standing jurisdictional; nor do Wyoming Statutes, absent express language or clear indicia of intent to the contrary. To be sure, prudential/statutory principles remain vital jurisprudential rules that assist courts in filtering cases. This discussion should not be construed as limiting our standing jurisprudence generally; rather, it merely clarifies that standing under Wyoming law is a jurisprudential principle, rather than a jurisdictional rule. A court may still, and should, raise standing issues sua sponte when the parties do not. See Osborn v. Emporium Videos , 848 P.2d 237, 241-42 (Wyo. 1993). In this case, the fact that TC and GC may lack standing under the adoption statutes did not deprive the district court of jurisdiction over their petition. The jurisprudential question is whether they have a cause of action under the adoption statutes.
II. Dismissal was appropriate because the petition failed to state a claim
[¶25] Even though we conclude that the district court had subject matter jurisdiction over TC and GC's adoption petition, we affirm the district court's dismissal for two reasons: (1) DFS, which had legal custody of L-MHB, did not relinquish custody of L-MHB to adoption; and (2) TC and GC lacked statutory standing because L-MHB did not live in their home when they filed their petition. Adoption is a statutory creation unknown at common law. JWT , 2005 WY 4, ¶ 4, 104 P.3d at 94. We therefore strictly construe the statutory adoption requirements, id. , and we require substantial compliance. See AMD , 766 P.2d at 552.
A. The district court correctly dismissed the adoption petition because TC and GC failed to obtain DFS's relinquishment of L-MHB
[¶26] Wyo. Stat. Ann. § 1-22-104(c)(ii) requires the petitioner to file "[a]ny relinquishments as provided by W.S. 1-22-109 necessary to show the court that the person or agency legally authorized to have custody and control of the child prior to the adoption, had duly relinquished the child to the petitioners for adoption[.]" In addition, Wyo. Stat. Ann. § 1-22-109 (LexisNexis 2017) lists those persons who must file a written consent and relinquishment to the adoption:
(a) A written relinquishment of custody of the child to be adopted and written consent to adoption shall be filed with the petition to adopt and shall be signed by:
....
(iii) The mother and putative father of the child if the name of the putative father is known; or
(iv) The mother alone if she does not know the name of the putative father, in which case she shall sign and file an affidavit so stating and the court shall determine whether the putative father has registered under W.S. 1-22-117 and if so, shall require notice to be given to the putative father; or
....
(vii) The person having exclusive legal custody of the child by court order; or
....
[¶27] TC and GC contend that the mother's consent is all that is required, even though DFS has exclusive legal custody of L-MHB through order of the juvenile court. However, when DFS has been granted legal custody of a child by order of the court, adoption petitioners must provide both proof that DFS has relinquished custody of the child and proof that the parent(s) has consented *569 before a court can proceed with the adoption.
[¶28] "[T]he Child Protection Act ... vests DFS with the authority to oversee the custody and care of children in cases of abuse and neglect." In re LB , 2014 WY 10, ¶ 9, 316 P.3d 1184, 1187 (Wyo. 2014). Here, L-MHB is in DFS's legal custody because of a neglect case in juvenile court against the mother. In Interest of L-MHB , 2017 WY 110, ¶ 4, 401 P.3d 949, 951 (Wyo. 2017).[3] "DFS is always authorized, by statute, to care for and place children." LB, ¶ 10, 316 P.3d at 1187. Under the Child Protection Act, which controls the prosecution of abuse and neglect cases, "[a]n ... agency vested with legal custody of a child by court order shall have the right to determine where and with whom the child shall live [.]" Wyo. Stat. Ann. § 14-3-429(e) (LexisNexis 2017) (emphasis added).
[¶29] The adoption statutes require that there be a written relinquishment and consent to the adoption by those listed in Wyo. Stat. Ann. § 1-22-109. Because § 1-22-109 uses the disjunctive "or" to separate the various persons who must consent and relinquish to effectuate the adoption, TC and GC argue that the mother's consent is all that is required. However, § 1-22-109 must be read in conjunction with § 1-22-104, which clearly requires the "consent to adoption pursuant to W.S. 1-22-109," and "[a]ny relinquishments ... necessary to show the court that the ... agency legally authorized to have custody and control of the child prior to the adoption, has duly relinquished the child to the petitioners for adoption." Wyo. Stat. Ann. § 1-22-104(c)(i) and (ii). See Matter of Adoption of BGD , 713 P.2d 1191, 1193 (Wyo. 1986) ("The mother did not physically relinquish the child ... as contemplated by the statute."). The statutes plainly require proof of DFS's relinquishment to the adoption. Any other result would obviate the juvenile court's order granting legal custody to DFS, as well as DFS's rights and responsibilities regarding placement under Wyo. Stat. § 14-3-429(e).
[¶30] We also reject TC and GC's argument that allowing DFS to effectively veto an adoption when it has legal custody of the child infringes on the mother's residual parental rights under Wyo. Stat. Ann. § 14-3-402(xvi) (LexisNexis 2017), which includes the right to consent to adoption. Here, for example, if DFS had consented to adoption and relinquished the child, the mother's consent would still be required under § 1-22-109.[4] Thus, mother retains her residual parental rights to grant or withhold her consent to adoption. However, when DFS has been granted legal custody of a child by court order, such consent must be accompanied by DFS's relinquishment.
B. Because L-MHB did not live in TC and GC's home at the time they filed their petition, the district court correctly dismissed the petition
[¶31] An adoption petition "shall be filed upon the entry of the child in the adoptive home or as soon thereafter as is reasonably convenient." Wyo. Stat. Ann. § 1-22-106. It is undisputed that L-MHB did not live in TC and GC's home when they filed their petition. The language of the statute is clear and unambiguous. Only a person with whom the child lives may file a petition to adopt that child. Anything else would lead to the absurd situation where a stranger to the child could petition the court to adopt that child. TC and GC did not address this defect in their brief. Instead, they contended at oral argument that, even though L-MHB did not live with them when they filed their petition, a court could still enter an interlocutory decree of adoption, wait six months, and then enter a final decree of adoption. We disagree.
[¶32] When a child has resided in the adoptive home for less than six months before a petition is filed, a court can either deny the petition or enter an interlocutory decree of adoption. Wyo. Stat. Ann. § 1-22-111(a)(i) and (iii) (LexisNexis 2017); see also AMD , 766 P.2d at 552-53. The interlocutory decree serves as a placeholder until a final decree is sought and granted after the six-month waiting period has ended. Id. An interlocutory *570 decree cannot serve as a substitute for the requirement that the child reside in the adoptive home at the time the petition is filed. Because L-MHB did not reside with them, TC and GC's claim, although perhaps genuine and well intentioned, is no different than "any citizen of Wyoming" and insufficient to give them standing under the statute. See Allred , 2018 WY 8, ¶ 44, 409 P.3d at 273 (citation omitted); see also Steel Co. , 523 U.S. at 97 n.2, 118 S.Ct. at 1013 n.2 (statutory standing asks whether "this plaintiff has a cause of action under the statute"); see also Davis , 442 U.S. at 239 n.18, 99 S.Ct. at 2274 n.18 ; The Tavern, LLC v. Town of Alpine , 2017 WY 56, ¶ 26, 395 P.3d 167, 174 (Wyo. 2017) ("Standing focuses on a litigant being properly situated to assert an issue for judicial determination." (citation omitted) ). TC and GC did not have statutory standing to file their adoption petition, they did not have a cause of action under the statute, and thus, the district court correctly dismissed their petition.
[¶33] Finally, TC and GC did not comply with the statutory requirement to file a medical report for the child with their petition, unless a parent joins the petition (such as in stepparent adoptions) or the child has lived with the adopting family for six months. Wyo. Stat. Ann. § 1-22-104(c)(iii). This failure provided further grounds for the district court to dismiss the petition.
CONCLUSION
[¶34] TC and GC failed to state a claim for adoption. They did not file the required proof of relinquishment from DFS, the legal guardian of L-MHB. Moreover, L-MHB did not live with TC and GC at the time they filed their petition, and TC and GC did not obtain and file a medical report for L-MHB with their petition. The district court's decision to dismiss the petition was correct.
[¶35] Affirmed.

Wyo. Stat. Ann. § 1-22-104(c) states:
(c) The following documents shall be filed with every petition to adopt a child:
(i) The appropriate consent to adoption pursuant to W.S. 1-22-109 ;
(ii) Any relinquishments as provided by W.S. 1-22-109 necessary to show the court that the person or agency legally authorized to have custody and control of the child prior to the adoption, has duly relinquished the child to the petitioners for adoption;
(iii) A report of the medical examination of the child made by a licensed Wyoming physician within thirty (30) days immediately preceding the filing of the petition to adopt. The report shall be made on forms provided by the department of family services. A medical report shall not be required when a parent of the child joins in the petition to adopt or when the child resided with the adoptive parents for more than six (6) months prior to filing the petition;
(iv) An affidavit from each petitioner setting forth:
(A) Any previous or current diagnosed psychiatric disorders of the petitioner;
(B) All felony convictions of the petitioner within the preceding ten (10) years;
(C) All misdemeanor convictions of the petitioner within the preceding five (5) years;
(D) The current parole or probation status of the petitioner, if any.
(v) An affidavit stating the name or names of persons awarded visitation rights to the child under W.S. 20-7-101 or 20-7-102 or an affidavit stating that no visitation rights under W.S. 20-7-101 or 20-7-102 have been awarded in regard to the child[.]
Wyo. Stat. Ann. § 1-22-104 was amended in 2018 by adding (c)(vi).

This judicially created exception is now codified at Wyo. Stat. Ann. § 1-22-110 (LexisNexis 2017) ; see also Wyo. Stat. Ann. § 1-22-108 (LexisNexis 2017).

The prior appeal arose from the juvenile case, not the current adoption case.

Adoption could proceed without consent in certain circumstances set forth at Wyo. Stat. § 1-22-110.