# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 94

APRIL TERM, A.D. 2019

*September 11, 2019*

IN THE MATTER OF THE ESTATE
OF:

GEORGE W. STANFORD, a/k/a
GEORGE WILLIAM STANFORD,
deceased.

ANDREW J. JOHNSON,

Appellant
(Petitioner),

v.                                                          S-19-0002

THE STATE OF WYOMING,

Appellee
(Respondent).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
 Robert P. Schuster and Bradley L. Booke of Robert P. Schuster, P.C., Jackson,
 Wyoming; Thomas N. Long and Aaron J. Lyttle of Long Reimer Winegar Beppler
 LLP, Cheyenne, Wyoming. Argument by Mr. Schuster.

*Representing Appellee:*
 Bridget Hill, Wyoming Attorney General; Michael J. McGrady, Deputy Attorney
 General; Daniel E. White, Senior Assistant Attorney General. Argument by Mr.
 White.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Chief Justice.

[¶1]    Andrew Johnson filed federal civil rights claims against the City of Cheyenne and several of its law enforcement officers for wrongful conviction and imprisonment.  Because one of the named detectives was deceased, Mr. Johnson filed a petition for probate of his estate and appointment of an administrator.  The probate court granted the petition, but it reversed itself when the State of Wyoming objected to the appointment.  Because we find that the State did not have standing to object to the appointment of the administrator, we reverse.

## ISSUES

[¶2]    Mr. Johnson presents several issues, but we find his first issue dispositive and restate it as:

> Did the probate court err in finding that the State of Wyoming
> had standing to object to the appointment of an administrator
> for George W. Stanford's estate?

## FACTS

[¶3]    Andrew Johnson was convicted of aggravated burglary and first-degree sexual assault in 1989.  In 2013, his convictions were vacated, and an order of actual innocence was entered based on testing of DNA found on the victim.  On April 17, 2017, Mr. Johnson filed a complaint in federal court against the City of Cheyenne and several of its law enforcement officers, alleging civil rights violations in the investigation and prosecution of the charges against him.

[¶4]    One of the detectives named in the federal complaint was George W. Stanford, who died in 2007.  On May 31, 2017, Mr. Johnson filed a petition in probate court for the probate of Mr. Stanford's intestate estate and for appointment of an administrator.  The petition identified the deceased's right to indemnification from the State Self Insurance Account and his right to possible coverage under a state-procured professional liability policy as assets of the estate.  On June 12, 2017, the probate court issued an order admitting the estate to probate and appointing an administrator.

[¶5]    On June 19, 2017, Mr. Johnson filed a creditor's claim against the Stanford estate for unknown amounts to be awarded in his federal action, and the administrator rejected the claim.  On July 10, 2017, the State filed a document in probate court entitled "Objections of the State of Wyoming to the Appointment of [an] Administrator for the Above-Captioned Estate."   The State cited the following as its interest in the administrator's appointment:

1

3. The State is affected by the appointment . . . because the appointment purports to create potential duties and obligations of the State to defend [the administrator], in his capacity as administrator, in a civil rights action brought by Andrew Johnson against the City of Cheyenne, George W. Stanford, deceased, Alan W. Spencer, a former Cheyenne Police Department officer, and various Doe defendants. . . .

4. Pursuant to Wyo. Stat. § 2-1-103, the State has the right to object to the appointment . . . and the State herewith requests that the time limitations specified therein be waived in view of the fact that the State did not receive notice of the petition filed in this matter until after [the] appointment. In addition, the State has standing to contest the appointment . . . pursuant to the Uniform Declaratory Judgments Act . . . .

[¶6] Mr. Johnson and the State stipulated to a stay of the probate proceedings, and that stay was lifted on November 3, 2017. On October 15, 2018, the probate court entered an order vacating the appointment of the administrator and closing the estate. The court ruled:

1. The State has standing to object to the appointment of [the administrator]. While the Petitioner disputes this, citing *Halliburton Energy Services v. Gunter*, 2007 WY 151, ¶8, 167 P.3d 645, 648 (Wyo. 2007), the present situation is distinguishable from *Halliburton*. The opening of this estate creates liabilities and obligations by the State that did not exist in *Halliburton*. *See Id*.

2. In accordance with its standing, the State of Wyoming may object to the appointment of [the administrator] pursuant to Wyo. Stat. § 2-1-103 (West 2018) (stating "all persons having an objection to the appointment of any person as a[n] . . . administrator" may object).

3. Although the State was late objecting, the Court finds good cause, based on the State's lack of notice, to waive the period for objections pursuant to Wyo. Stat. § 2-1-103.

4. Not only is the creditor's claim merely speculative, but also untimely pursuant to Wyo. Stat. 2-4-211 (West 2018).

2

5. The law in this regard is clear. "If the letters are not issued within the time specified, all claims of creditors are forever barred . . ." Wyo. Stat. Ann. § 2-4-212.

6. Thus, this Court's grant of Administration of the Estate upon a speculative creditor's claim approximately ten (10) years after the death of the decedent was improvidently ordered.

[¶7] Mr. Johnson filed a timely notice of appeal to this Court.

## STANDARD OF REVIEW

[¶8] The existence of standing is a question of justiciability that this Court reviews de novo. *Bird v. Lampert*, 2019 WY 56, ¶ 7, 441 P.3d 850, 853-54 (Wyo. 2019) (citing *In re L-MHB*, 2018 WY 140, ¶ 24, 431 P.3d 560, 568 (Wyo. 2018)).

## DISCUSSION

[¶9] "A party generally has standing if it is 'properly situated to assert an issue for judicial determination.'" *Gheen v. State ex rel. Dep't of Health, Div. of Healthcare Financing/EqualityCare*, 2014 WY 70, ¶ 16, 326 P.3d 918, 923 (Wyo. 2014) (quoting *Cox v. City of Cheyenne*, 2003 WY 146, ¶ 9, 79 P.3d 500, 505 (Wyo. 2003)); *see also The Tavern, LLC v. Town of Alpine*, 2017 WY 56, ¶ 26, 395 P.3d 167, 174 (Wyo. 2017) ("Standing focuses on a litigant being properly situated to assert an issue for judicial determination."). We recently clarified that standing is not jurisdictional but "remains a pragmatic and important justiciability doctrine." *L-MHB*, ¶ 19, 431 P.3d at 567. In *L-MHB*, we also discussed the two types of standing that our precedent has recognized: prudential and statutory. *Id.* ¶¶ 19-20, 431 P.3d at 567. With regard to prudential standing, we noted that it "encompass[es] . . . at least three broad principles":

> [T]he general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

*L-MHB*, ¶ 19, 431 P.3d at 567 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126, 134 S.Ct. 1377, 1386, 188 L.Ed.2d 392 (2014)).

[¶10] Wyoming's prudential standing test, known as the *Brimmer* test, incorporates these same general principles. *L-MHB*, ¶ 19, 431 P.3d at 567.

First, a justiciable controversy requires parties having existing and genuine, as distinguished from theoretical, rights or interests. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion. Third, it must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities be of such great and overriding public moment as to constitute the legal equivalent of all of them. Finally, the proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues. Any controversy lacking these elements becomes an exercise in academics and is not properly before the courts for solution.

*Allred v. Bebout*, 2018 WY 8, ¶ 37, 409 P.3d 260, 270 (Wyo. 2018) (quoting *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo. 1974)).

[¶11]   "Statutory standing is a close cousin of prudential standing, and looks to whether '*this* plaintiff has a cause of action under the statute . . . .'" *L-MHB*, ¶ 20, 431 P.3d at 567 (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 97 n.2, 118 S.Ct. 1003, 1013 n.2, 140 L.Ed.2d 210 (1998) (emphasis in *Steel Co.*)).   Where the question is statutory standing, prudential considerations do not play a role in the standing determination.   The United States Supreme Court has explained:

In sum, the question this case presents is whether Static Control falls within the class of plaintiffs whom Congress has authorized to sue under § 1125(a). In other words, we ask whether Static Control has a cause of action under the statute. That question requires us to determine the meaning of the congressionally enacted provision creating a cause of action. In doing so, we apply traditional principles of statutory interpretation. We do not ask whether in our judgment Congress *should* have authorized Static Control's suit, but whether Congress in fact did so. Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, *see Alexander v. Sandoval*, 532 U.S. 275, 286-287, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), it

4

cannot limit a cause of action that Congress has created merely because " prudence" dictates.

*Lexmark*, 572 U.S. at 128, 134 S.Ct. at 1387-88 (footnote omitted); *see also L-MHB*, ¶ 20, 431 P.3d at 567 (quoting *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011)) ("[I]f a party lacks standing under the statute at issue, their 'claim should be dismissed for failure to state a claim upon which relief can be granted . . . .'").

[¶12]   This is consistent with how we have approached the question when a statute dictates who has standing.  For example, in *L-MHB*, we reviewed the dismissal of an adoption petition for lack of standing.  *L-MHB*, ¶¶ 31-32, 431 P.3d at 569-70.  We did not consider the interests the petitioners might assert under a prudential standing analysis but instead looked solely to whether they had met the statutory grounds for filing an adoption petition. *Id*.  Finding that they did not, we concluded that they lacked statutory standing to file the petition and did not have a cognizable claim under the adoption statutes.  *Id.* ¶ 32, 431 P.3d at 570.  We thus upheld the district court's dismissal of their petition.  *Id*.; *see also Gheen*, ¶ 16, 326 P.3d at 923 (upholding State's standing to sue based solely on language of Medicaid statutes); *Halliburton Energy Servs., Inc. v. Gunter*, 2007 WY 151, ¶¶ 8-12, 167 P.3d 645, 648-49 (Wyo. 2007) (looking to probate code to determine standing to contest administrator's appointment); *In re Estate of Peters*, 2001 WY 71, ¶ 9, 29 P.3d 90, 92 (Wyo. 2001) (looking to probate code to define interested person with standing to object to administrator's appointment).

[¶13]   The question of who has standing to contest a petition for letters of administration is thus one of statutory interpretation, not prudential considerations.  In that regard, the probate code provides:

> Any person interested may contest the petition by filing written opposition on the ground of the incompetency of the applicant, or may assert his own rights to the administration and pray that letters be issued to himself. In the latter case the contestant shall file a petition and submit evidence in support thereof, taken and reduced to writing before the clerk or commissioner of the court, and the court shall hear the two (2) petitions together.

Wyo. Stat. Ann. § 2-4-206 (LexisNexis 2019).[1]

---

[1] In analyzing the State's right to object to the administrator's appointment, the probate court did not consider this provision and instead looked to Wyo. Stat. Ann. § 2-1-103, which provides:

> For appointments made pursuant to the Wyoming Probate Code, unless a shorter period of time is specified in the code or by the court, or where an appointment will be made with no hearing or no notice, all

5

[¶14] We interpreted this provision in *Halliburton* and concluded that the legislature intended "to limit the number of 'interested persons' who may contest a petition for letters of administration." *Halliburton*, ¶ 8, 167 P.3d at 648. We found the provision clear and held that "in the absence of an incompetent administrator, one can contest appointment of the administrator only if one is entitled, in one's own right, to act as administrator." *Id.* ¶ 8, 167 P.3d at 649 (footnote omitted). In so holding, we rejected Halliburton's argument that its interest as a wrongful death defendant gave it a stake in the probate proceeding.

> The district court properly analyzed and resolved the issue of standing against Halliburton in this case. Following the concepts outlined above, the district court concluded that Halliburton had "no genuine legal interest in the probate court's appointment of Retha Gunter as personal representative." Once again, we agree with the district court. Halliburton's "personal stake" was in its defense of the wrongful death action, not in the probate court's appointment of a personal representative.

*Halliburton*, ¶ 12, 167 P.3d at 649.

[¶15] The State does not assert that it is a person or entity entitled in its own right to act as administrator or that the appointed administrator was incompetent. It therefore had no basis under the probate code to contest the appointment of the administrator and is instead in a position analogous to that of Halliburton. Halliburton contested the appointment of an administrator to avoid defending against a wrongful death claim. The State has taken the same action to avoid defending the Stanford Estate against a civil action. In both cases, the contestants are no doubt tangibly interested in avoiding the need to defend, or defend against, an estate. As we observed in *Halliburton*, however, such interests express a stake in separate civil actions. They do not fit within the statutorily-defined interest required to contest the appointment of an administrator. *Halliburton*, ¶ 12, 167 P.3d at 649.

---

persons having an objection to the appointment of any person as a personal representative, administrator, executor, trustee, conservator, fiduciary or receiver shall file the objection in the court considering the appointment no less than five (5) days prior to any hearing scheduled to consider the appointment. A court may waive this requirement upon a showing of good cause.

Wyo. Stat. Ann. § 2-1-103 (LexisNexis 2019). The court's reliance on this provision was misplaced. Wyo. Stat. Ann. § 2-4-206 defines who may contest the appointment. Wyo. Stat. Ann. § 2-1-103 provides only the time frame for making objections.

[¶16] We also reject the State's assertion that it has a cognizable basis for contesting the administrator's appointment under the Declaratory Judgment Act. We have said:

> [A]s a general matter, a declaratory judgment action may be proper even though the petitioner has other remedies at law; however, when the legislature has provided a specific statutory procedure for addressing an issue, a declaratory judgment action may not be used in lieu of that procedure.

*Matter of Estate of Britain*, 2018 WY 101, ¶ 32, 425 P.3d 978, 988 (Wyo. 2018).

[¶17] We observed in *Halliburton* that with its enactment of Wyo. Stat. Ann. § 2-4-206, the legislature intended "to limit the number of 'interested persons' who may contest a petition for letters of administration." *Halliburton*, ¶ 8, 167 P.3d at 648. To allow a party to file a declaratory judgment action, citing interests outside those prescribed by the probate code, would subvert the legislature's intent, and it would not be a proper use of the declaratory judgment act. *See Britain*, ¶ 39, 425 P.3d at 989 (declaratory judgment action not permitted to contest will as it would undermine probate code procedure and purposes); *Rock v. Lankford*, 2013 WY 61, ¶ 37, 301 P.3d 1075, 1085 (Wyo. 2013) (declaratory judgment action not permitted to contest ballot proposition as it would render election code limitations on contest meaningless); *Broek v. County of Washakie*, 2003 WY 164, ¶ 7, 82 P.3d at 269, 272 (Wyo. 2003) (declaratory judgment action not permitted to establish a public road where a specific statutory procedure exists for establishing it by prescription).

[¶18] Because the State did not have standing under the probate code to contest the appointment of an administrator for the Stanford Estate, it was inappropriate for the probate court to rule on the merits of the State's objection. For the same reason, we likewise do not address the substantive question of the validity of the administrator's appointment. *See Halliburton*, ¶ 13, 167 P.3d at 650 ("[I]nasmuch as Halliburton lacks standing to challenge the appointment of the personal representative, it would be inappropriate for us to answer the underlying substantive question of the validity of the appointment.").

## CONCLUSION

[¶19] The probate code limits the persons who have standing to contest the appointment of an administrator. Because the State did not meet the probate code requirements for standing, the district court should have dismissed the State's objection for failure to state a claim. Reversed.

7